# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**AARON GRANDBERRY,**

    Plaintiff,

    v.                                                 Case No. 19-CV-546

**TERRY KISER,**

    Defendant.

## DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Aaron Grandberry, who is representing himself, filed this lawsuit under 42 U.S.C. §1983, alleging that the defendant violated his civil rights. (ECF No. 1.) District Judge Lynn Adelman screened the complaint and allowed Grandberry to proceed with a claim that Defendant Terry Kiser violated his Eighth Amendment rights. (ECF No. 12.) Before me now is the defendant's motion for summary judgment. (ECF No. 27.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the

suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc.,Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## FACTS

Attorneys litigating against *pro se* parties in this district must include with their motion for summary judgment a copy of the relevant local rules, which explains that the court takes uncontradicted facts as true for purposes of deciding the motion. *See* Civ. L. R. 56(a) (E.D. Wis.) The defendant complied with this requirement. (ECF

2

No. 27.) I also separately issued an order warning Grandberry that failure to respond to the defendant's proposed findings of fact would result in me taking them as true for purposes of resolving the motion for summary judgment. (ECF No. 33 at 2.) Despite these warnings, Grandberry did not respond to the defendant's proposed findings of fact. Thus, I will take them as true for purposes of resolving this motion. *See* Civ. L. R. 56(b)(4) (E.D. Wis.)

Grandberry is an inmate at the Fox Lake Correctional Institution. (ECF No. 29, ¶ 1.) Kiser is a nurse at Fox Lake. (*Id.*, ¶ 2.)

On November 5, 2018, Grandberry received a flu shot. (*Id.*, ¶ 3.) According to Grandberry, the flu shot "was severely infected," so he contacted the Health Services Unit (HSU). (ECF No. 34 at 1.) The following day, on November 6, 2018, HSU staff examined Grandberry twice. (*See* ECF No. 30-1 at 29-31.)

At around 10 a.m., Kiser examined Grandberry. (*Id.* at 30; *see also* ECF No. 29, ¶¶ 4-5.) According to Kiser's notes, Grandberry complained of pain and swelling in his deltoid (shoulder). (ECF No. 30-1 at 30-31.) Kiser concluded that the shoulder pain was a "localized reaction" to the flu shot, something that is very common in the days following a flu shot. (ECF No. 29, ¶¶ 6-7.) She told Grandberry that her arm was also sore following her flu shot. (*Id.*)

Kiser then ordered ice and ibuprofen to alleviate the pain. (*Id.*, ¶ 9.) Kiser explains that ice and ibuprofen are recommended "first-line treatment." (*Id.*, ¶ 10.) "First-line treatment" is the initial, most conservative, treatment that is likely to

3

resolve the issue. (*Id.*, ¶ 15.) She states that ice and ibuprofen were appropriate because they work together to relieve discomfort while the reaction subsides. (*Id.*)

At around 5:00 p.m., a different nurse (Rodger Krantz) examined Grandberry again. (*See* ECF No. 30-1 at 29-30.) According to his notes, Grandberry complained of shoulder pain and there was "some weeping from injection site" but no fever. (*Id.* at 29.) During this appointment, Dr. Fuller also examined Grandberry. (*Id*; *see also* ECF No. 29, ¶ 8.) Dr. Fuller told Grandberry to contact HSU immediately if his symptoms got worse or if he had symptoms of an allergic reaction, such as swelling on his tongue or itchiness in his throat. (ECF No. 29, ¶ 8.) Dr. Fuller did not order any additional tests or treatment beyond what Kiser had already ordered earlier that day. (*See* ECF No. 30-1 at 29-30.)

The following day, on November 7, 2018, Kiser examined Grandberry again. (ECF No. 29, ¶¶ 11-12.) According to her notes, Grandberry's muscle was swollen and tight; he had scratches and scabs at the injection site. (*Id.*, ¶12; *see also* ECF No. 30-1 at 29.) Kiser ordered hydrocortisone cream for the irritation at the injection site. (ECF No. 29, ¶¶ 13-14.) Hydrocortisone cream reduces swelling, itching, and redness. (*Id.*) Grandberry already had an order for ice and ibuprofen (from the day before) for his muscle tightness and swelling. (*Id.*, ¶ 13.)

Between November 8, 2018 and November 26, 2018, other medical care providers at Fox Lake examined Grandberry. (*Id.*, ¶¶ 16-21.) On November 8, 2018, two nurses (Krantz and Lyons) examined Grandberry. (*Id.*, ¶ 16; *see also* ECF No. 30-1 at 27-28.) They noted that Grandberry had an "enlarged edema" and a small

4

amount of "weeping" from the injection site. (*Id.*) They told Grandberry about frozen shoulder syndrome and told him to keep moving his arm. (*Id.*) They gave him a sling for comfort and scheduled him for a follow-up appointment the following Monday. (*Id.*) Grandberry states that the sling "did nothing to stop the pain." (ECF No. 34 at 2.)

Four days later, on November 12, 2018, a different nurse (Shannon) examined Grandberry. (ECF No. 29, ¶ 17; *see also* ECF No. 30-1 at 26-27.) Grandberry continued to complain about pain. (*Id.*) According to medical records, there was no redness or warmth on his arm. (*Id.*) The injection site was scabbed and there was no sign of active drainage. (*Id.*) The nurse encouraged Grandberry to continue with ice/heat and to perform his arm exercises. (*Id.*)

Two days after that, on November 14, 2018, two other nurses (Pulda and Radovich) examined Grandberry. (*Id.*, ¶18; *see also* ECF No. 30-1 at 35.) They noted a thick green drainage from the injection site. (*Id.*) They swabbed the area and sent it to the lab. (*Id.*) They also ordered antibiotics, applied an antibacterial cream, and gave him a pillow to elevate his arm. (*Id.*) Grandberry explains that he did not timely receive the antibiotics because "housing staff" said that his ID would not scan for the medication. (ECF No. 34 at 2.)

Two days later, on November 16, 2018, Grandberry had a follow-up appointment with a nurse (Shannon). (*Id.*, ¶ 19; *see also* ECF No. 30-1 at 26.) Grandberry reported that the injection site was still painful and that he was taking the antibiotics. (*Id.*) The nurse noted that there was no active drainage and the arm

5

was less firm. (*Id*.) She told Grandberry not to scratch the injection site and to continue with the antibiotics and shoulder exercises. (*Id*.)

Three days later, on November 19, 2018, Grandberry had another follow-up appointment with a nurse (Shannon). (ECF No. 29, ¶ 20; *see also* ECF No. 30-1 at 24-24.) Grandberry reported a lot of pain at this appointment. (*Id*.) According to his medical records, the injection site was not firm and there was no active drainage. (*Id*.) The nurse scheduled an appointment with an Advanced Care Provider and told Grandberry to continue with his shoulder exercises. (*Id*.)

Kiser then examined Grandberry again on November 27, 2018. (*See* ECF No. 29, ¶ 22.) She saw no signs or symptoms of an infection. (*Id*.; *see also* ECF No. 30-1 at 24.) The area appeared healed. (*Id*.) Kiser noted that there was area, about 2mm around the injection site, that had an "old mark." (*Id*.) She also noted that Grandberry was scheduled to see an Advanced Care Provider later that week for his complaints of pain. (*Id*.)

Grandberry was examined twice more in December 2018. (ECF No. 29, ¶ 23; *see also* ECF No. 30-1 at 21-23). The nurse (Shannon) stressed the importance of Grandberry performing his exercises. (*Id*.) On January 30, 2019, a nurse (Pulda) noted that Grandberry signed up for two basketball leagues and he played the whole league game. (ECF No. 29. ¶ 24.)

About six months later, on June 21, 2019, Kiser examined Grandberry again. (*Id*., ¶ 25; *see also* ECF No. 30-1 at 20.) She noted that Grandberry was in physical therapy for his pain and that HSU had followed-up with him multiple times. (*Id*.)

6

Kiser saw no signs of swelling or an injury. (*Id.*) Grandberry had full range of motion by that time. (*Id.*)

## *ANALYSIS*

"[T]he Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). The court performs a two-step analysis, "first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Id.* at 727–28 (citing *Farmer v. Brennan*, 511 U.S. 825, 843 (1994)).

"The requirement of subjective awareness tethers the deliberate-indifference cause of action to the Eighth Amendment's prohibition of cruel and unusual punishment." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). "[T]he court looks into [a prison official's] subjective state of mind." *Petties*, 836 F.3d at 728. A plaintiff need not show that the official intended harm or believed that harm would occur, but mere negligence is not enough. *Id.* Indeed, a plaintiff must provide evidence that an official actually knew of and disregarded a substantial risk of harm. *Id.* at 727. Neither professional disagreement nor medical malpractice constitutes deliberate indifference. *Cesal v. Moats*, 851 F.3d 714, 721, 724 (7th Cir. 2017).

7

For purposes of summary judgment, Kiser does not dispute that Grandberry suffered an objectively serious medical condition following his flu shot. (ECF No. 28 at 9-10.) Instead, she argues that she provided appropriate first-line treatment and any other issues Grandberry identifies do not involve her. I agree and conclude that Grandberry has not put forth evidence from which a jury could find that Kiser actually knew about his medical condition and disregarded it.

Kiser initially examined Grandberry on November 6, 2018. At that appointment, Grandberry complained about shoulder pain, so Kiser ordered ice and ibuprofen. The following day, on November 7, 2018, Kiser examined Grandberry again. At that appointment, Kiser noticed scratches and irritation at the injection site, so she ordered hydrocortisone cream. As each one of Grandberry's symptoms was brought to Kiser's attention, she took appropriate steps to resolve the issue.

Grandberry disagrees with Kiser's approach. (*See* ECF No. 34.) He states that Kiser should have immediately ordered an "x-ray" or a "blood test" to determine whether he had "tissue damage" or a "severe infection." (*Id.* at 3.) He says that if Kiser had done this, he may not have needed physical therapy later on. (*Id.* at 2-3.)

Grandberry's argument fails for several reasons. First, Grandberry does not have a constitutional right to the medical care of his choosing. *See Walker v. Wexford Health Sources, Inc.,* 940 F.3d 954, 965 (7th Cir. 2019) ("[A]n inmate is not entitled to demand specific care.") Kiser explains that it is standard medical protocol for health care providers to first try the most conservative treatment that is likely to resolve the issue. She indicates that ice and ibuprofen were appropriate first-line

8

treatment and she saw no reason to deviate from standard protocol given Grandberry's symptoms at the time. Grandberry's disagreement with her medical judgment is not enough to show deliberate indifference. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) ("[M]ere disagreement with a [nurse's] medical judgment is enough to prove deliberate indifference in violation of the Eighth Amendment.")

Second, Dr. Fuller also examined Grandberry following Kiser's initial assessment. He appeared to agree with her treatment plan. He too did not order any other tests or treatments based on Grandberry's condition at that time. The Seventh Circuit recently reviewed a case with similar facts and concluded that failure to order "a particular diagnostic technique" to determine whether an inmate had an infection "is a classic example of a matter for medical judgment." *Murphy v. Wexford Health Sources Inc.,* 962 F.3d 911, 916 (7th Cir. 2020) (internal citations omitted). In that case, one doctor concluded that additional testing was necessary to rule out an infection and the other doctor disagreed. *Id*. The court concluded that the disagreement between the doctors did not constitute deliberate indifference. *Id*. "At most" it was medical malpractice. *Id*. Here, neither Kiser nor Dr. Fuller believed testing was necessary at the time to rule out an infection.

Grandberry nonetheless argues that Kiser did not use her "medical judgment" when examining him. (*See* ECF No. 34 at 3.) Grandberry appears to believe that an innocuous comment she made during the November 6 appointment—that her arm was also sore following her flu shot—shows that she used her "personal experience"

9

to diagnose his medical condition rather than her medical judgment. (*Id*.) I find this argument unpersuasive. While I can imagine a scenario where a nurse is dismissive of flu shot pain (because, obviously, injections hurt), that is not what happened here. Kiser saw Grandberry in person, she physically examined him, and she concluded that ice and ibuprofen were appropriate given the symptoms she saw at that time. Kiser's off-handed comment that her personal experience with the flu shot was consistent with what Grandberry was experiencing does not show an intent to ignore his specific condition.

The remainder of Grandberry's complaints in this case do not involve Kiser. (*See* ECF No. 34 at 3-4.) Grandberry states that he did not timely receive his antibiotics because "housing staff" told him that his ID would not scan for it. Grandberry implies that Kiser should take responsibility for this mishap, but he has no evidence supporting that conclusion. Kiser was not the individual who examined him on the day he first showed signs of an infection (the day he had "thick green drainage" from the injection site). Nor was she the individual who prescribed the antibiotics. Grandberry suspects that someone in HSU forgot to record the prescription in the computer, but there is no evidence suggesting that it was Kiser.

Grandberry also states that the sling was not effective and that his continuing complaints of pain went unanswered. Kiser, however, was not involved in his medical care when he made those complaints. To the extent Grandberry needed treatment for pain beyond what Kiser initially prescribed on November 6-7, Kiser was not aware of it because she did not examine him during the appointments when he raised those

10

concerns. *See e.g. Machicote v. Roethlisberger*, 969 F.3d 822, 828 (7th Cir. 2020) (concluding that a defendant was not personally involved in an inmate's medical care when she did not have knowledge of his complaints and treatment plan.)

Kiser did examine Grandberry on two other occasions, once in late November 2018 and once in June 2019, but Grandberry does not identify any specific factual disputes and/or legal issues regarding her conduct during these appointments. (*See* ECF No. 34 at 4.) According to Kiser, by the time she examined him on November 27, 2018, Grandberry was already scheduled for an appointment with an Advanced Care Provider to resolve his complaints of continued pain. She saw no signs or symptoms of an infection. And the area appeared healed. When Kiser examined him again seven months later, on June 21, 2019, Grandberry was in physical therapy and he had full range of motion. Based on this record, no reasonable jury could conclude that Kiser was deliberately indifferent towards his medical condition. Accordingly, I will grant Kiser's motion for summary judgment and dismiss this case.

## ORDER

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (ECF No. 27) is **GRANTED** and this case is **DISMISSED**. The clerk of court shall enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely

requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 3rd day of November, 2020.

BY THE COURT:

NANCY JOSEPH
United States Magistrate Judge